IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NICHOLAS HEATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VILLAGE OF CENTRAL CITY, ILLINOIS, GARY HALL, in his official capacity as Mayor, Trustee, and President of the Village of Central City, Illinois, KEN BUCHANAN, in his official and individual capacity, and MATTHEW BLAKE DUKES, ROSEANN PICKETT, DARWIN CUSHMAN, and CHUCK MATTMILLER in their official capacity as Trustees for the Village of Central City, Illinois, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:22-cv-3120-DWD |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM & ORDER</u>

DUGAN, District Judge:

Before the Court is Plaintiff's Second Motion for Sanctions, which was fully briefed with the parties' respective Response and Reply. (Docs. 59, 64, 65). Those submissions, as well as a Joint Written Discovery Report ("JWDR"), were the subject of a hearing on October 2, 2024. (Docs. 66, 67, 68).[1] The Court reserved ruling on the Second Motion for

---

[1] The JWDR was sent to the Court's proposed documents email address on September 18, 2024. After the October 2, 2024, hearing, which included discussions of the JWDR, the Court, in part, ordered:

[A]s to the JWDR, which involves Request 7 of Plaintiff's First Requests for Production, Plaintiff's Second and Third Requests for Production, and Interrogatory 3 of Plaintiff's Second Set of Interrogatories, the parties are **DIRECTED** to continue meeting and conferring on potential resolutions to the discovery disputes that do not require action by

1

Sanctions until the close of discovery, which occurred on February 28, 2025. (Docs. 69 & 82). Now, for the reasons explained below, the Second Motion for Sanctions is **DENIED**.

## I. BACKGROUND

The parties in this case encountered various discovery disputes. Multiple Joint Written Discovery Reports and a Motion to Compel were presented to the Court, resulting in the entry of a Discovery Order. (Docs. 33, 35, 37, 38, 57). Also, as its caption suggests, the Second Motion for Sanctions was preceded by a First Motion for Sanctions that related to the same discovery disputes. (Docs. 40, 46, 48). To resolve the Second Motion for Sanctions, the Court briefly discusses this background.

In its Discovery Order, dated April 19, 2024, the Court resolved Plaintiff's Motion to Compel largely in his favor. (Docs. 37 & 38). Defendants were directed to take nine specific actions toward compliance in the discovery process, including the following:

---

the Court. However, if the discovery disputes persist, as to require the involvement of the Court, then the parties are **DIRECTED** to comply with the remaining provisions of the Court's Case Management Procedures. *See* Case Management Procedures of Judge David W. Dugan, Discovery Disputes, *Discovery Motion Practice*, pg. 4 ("In the event that discovery disputes remain unresolved after submission of the joint written discovery report, either party may file within 14 days of such submission a Motion to Compel, Motion for Protective Order or similar motion or request regarding those reported but unresolved disputes. The party objecting to or disputing the discovery request must file a response, if at all, within 7 days of the filing of the motion. Given that the parties should have complied with the joint report process, any motion or response thereto is limited to 7 pages."). Notwithstanding the deadlines contemplated in those Case Management Procedures, the Court will accept any discovery motion related to the JWDR that is filed before the November 6, 2024, deadline for completing discovery. The opponent shall then have 7 days to respond.

(Doc. 69).

The parties did not take further action related to the JWDR after the entry of the above Discovery Order. And, as noted above, discovery has now closed. Accordingly, the Court considers the matters discussed in the JWDR resolved without the need for additional discussion in this Memorandum & Order.

1. Produce the relevant insurance policy within 10 days of the Discovery Order's date under Federal Rule of Civil Procedure 26(a)(1)(A)(iv).

2. Respond to Interrogatory 2(c) of Plaintiff's First Set of Interrogatories, identifying the documents contemplated therein, if any, within 10 days of the Discovery Order's date.

3. Fully respond to Interrogatory 4 of Plaintiff's First Set of Interrogatories within 10 days of the Discovery Order's date.

4. Fully respond to Interrogatory 5 of Plaintiff's First Set of Interrogatories within 10 days of the Discovery Order's date.

5. Fully respond to Interrogatory 6 of Plaintiff's First Set of Interrogatories within 10 days of the Discovery Order's date.

6. Meet and confer on an agreeable date for Plaintiff to inspect the original complaints of Karlie Patten.

7. Comply with Requests 4-8, 25-26, and 28 of Plaintiff's First Set of Requests for Production within 10 days of the Discovery Order's date.

8. Produce any documents, in their possession and for which there was no claim under the work product doctrine, responsive to Requests 21, 22, and 23 of Plaintiff's First Set of Requests for Production within 10 days of the Discovery Order's date. To the extent Defendants were withholding documents based on the work product doctrine, they were directed to provide Plaintiff with a privilege log, itemizing and briefly describing the nature of each withheld document, within 10 days of the Discovery Order's date. If Plaintiff disagreed with any assertion by Defendants of the work product doctrine, then the parties were directed to follow the "Discovery Disputes" provisions of the Court's Case Management Procedures. Finally, to the extent Plaintiff was requesting an order for attorneys, who have not appeared before the Court, to produce documents pursuant to his First Set of Requests for Production, that request was denied.[2]

9. Answer Request 27 of Plaintiff's First Request for Admissions within 10 days of the Discovery Order's date.

---

[2] It appears this dispute was addressed by the parties and fully resolved by the Court elsewhere on the docket. (Docs. 45, 47, 51, 52, 53, 54).

(Doc. 38, generally).

On May 3, 2024, Plaintiff filed a First Motion for Sanctions under Federal Rule of Civil Procedure 37, suggesting Defendants failed to timely comply with 8 of the Court's 9 directives. (Doc. 40, pgs. 1-2). When resolving the First Motion for Sanctions, the Court initially impressed upon the parties its belief that the discovery disputes, which did not present any unusual degree of difficulty, had been ongoing for far too long. (Doc. 46, pgs. 5, 7). It appeared discovery stalled merely because the parties lacked the motivation or the will to get it back on track. (Doc. 46, pg. 5). For example, the parties failed to utilize the Court's Case Management Procedures, which ordinarily facilitate the resolution of discovery disputes by experienced counsel without the Court's intervention or handholding on routine and noncomplex matters. (Doc. 46, pg. 5). The Court further noted Plaintiff was forced to obtain leave to brief his Motion to Compel, on which he was almost entirely successful. (Doc. 46, pg. 5). Defendants' positions were largely untenable, as even they admitted "the Motion to Compel was justified." (Docs. 41, pg. 4; 46, pg. 5).

Ultimately, the Court found Defendants' attorney was at fault for failing to timely comply with the Court's Discovery Order. (Doc. 46, pgs. 6-7) (citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Fed. Nat'l Mortg. Ass'n v. Chicago Title Ins. Co.*, No. 11-cv-768, 2019 WL 5298728, *3 (S.D. Ind. Sept. 20, 2019); *Clinical Wound Sols., LLC v. Northwood, Inc.*, No. 18-cv-7916, 2023 WL 3568624, *10 (N.D. Ill. May 19, 2023); *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000)). Defendants ignored the timeline that was clearly set forth in that Discovery Order and, according to Plaintiff's Reply, still had not satisfied their discovery obligations. (Doc. 46, pg. 5). The Court found this was a choice

by Defendants. (Doc. 46, pg. 5). For example, they did not seek an extension of the time to comply with the Discovery Order, which likely would have been freely given, and they instead sought a finding of good cause and excusable neglect under Federal Rule of Civil Procedure 6(b). (Doc. 46, pg. 6). The Court found it could not ignore the fact that Defendants' actions resulted in a stall of discovery and disobedience. (Doc. 46, pg. 6).

For these reasons, the First Motion for Sanctions was granted in part and denied in part. (Doc. 46, pgs. 6-7) (citing *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 670 (7th Cir. 1996); *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024 (7th Cir. 1991)). In light of Plaintiff's allegations that Defendants' untimely supplemental responses were still not compliant with their discovery obligations, which Defendants appeared to dispute, the parties were directed to diligently meet, confer, and, if necessary, to report on any remaining discovery disputes. (Doc. 46, pgs. 6-7). Defendants' attorney was also directed to pay the reasonable expenses, including attorney fees, associated with Plaintiff's preparation of the First Motion for Sanctions. (Docs. 46, pgs. 6-7) (citing Fed. R. Civ. P. 37 (b)(2)(C)). Defendants' attorney subsequently informed the Court, in a letter sent to its proposed documents email address, that the parties independently resolved the issue related to the payment of reasonable expenses to Plaintiff's counsel, as well as the other discovery disputes, without the need for further judicial action. (Docs. 46, pgs. 6-7; 48).

In view of this background, the Court resolves the Second Motion for Sanctions.

## II. ANALYSIS

Plaintiff requests sanctions related to Interrogatory 2(c) of his First Set of Interrogatories under Rule 37(b)(2)(A). (Doc. 59). As to Plaintiff's discharge, Interrogatory

2(c) inquires as to whether, "[i]n making the decision, the individuals identified in subpart A relied on any documents." (Docs. 59-3, pgs. 3-4). Defendants were asked to "identify the documents on which they relied." (Docs. 59-3, pgs. 3-4). Defendants initially answered that Interrogatory as follows: "The decision was made by a vote at the Village Board Meeting after conversations in closed session, which are privileged. The meeting minutes of the close[d] session have previously been produce[d]." (Doc. 59-3, pg. 4).

In the Court's prior Discovery Order, dated April 19, 2024, the Court reasoned: "Defendants' claimed privilege, which was in no way explained to the Court, appears to be inapplicable. Plaintiff does not request the substance of closed session conversations. He requests the identification of documents relied upon in making the discharge decision." (Doc. 38, pg. 2). They were directed to respond to Interrogatory 2(c), identifying the documents contemplated therein, if any, within 10 days. (Doc. 38, pg. 2).

On August 21 and 22, 2024, three of the four relevant individual Defendants—*i.e.*, Defendants Cushman, Hall, Mattmiller, and Pickett—tendered substantially similar Amended Answers to Interrogatory 2(c), stating:

> The decision was made by a vote at the Village Board Meeting after conversations in closed session. The meeting minutes of the close[d] session have previously been produce[d]. The documents available for review by the Board was the report of Attorney Charles A. Pierce and documents and complaints of Karlie Patten. In addition, Attorney Tracy Willenborg, City Attorney, met with the Village Board. The Board was advised of Village of Central City Ordinance Chapter 12, Section 12-12-7 and Article XI of Chapter 12. Regarding a specific document replied [*sic*] upon was the report of Attorney Charles A. Pierce.

(Docs. 59-2).[3] [4]

Plaintiff suggests "Defendants' statements are untrue; they did not produce the minutes or the recording (closed sessions are recorded)." (Doc. 59, pg. 2). Although Plaintiff concedes that he did not request the minutes in Interrogatory 2(c), Defendants "volunteered the false information under oath." (Doc. 59, pg. 2). Also, Plaintiff notes he separately requested such minutes in his Requests for Production, but no such minutes or recordings were produced by Defendants. (Doc. 59, pg. 2). When Plaintiff attempted to resolve this issue by informally asking when the meeting minutes were produced, Defendants' attorney stated: "Reference to the close[d] session minutes when [Plaintiff] was hired as Chief." (Doc. 59, pg. 2). Plaintiff suggests that is impossible, as Interrogatory 2(c) relates to Plaintiff's discharge rather than to his promotion. (Doc. 59, pg. 3).

Further, Defendants have allegedly exhibited "a pattern of leaving their answers vague, giving themselves room to change the meaning of their answers." (Doc. 59, pgs. 3-4). For example, Plaintiff argues Defendant Hall's answer that he "replied [*sic*] upon…the document in which [Plaintiff] admitted to the allegations of Karlie Patten" is nonresponsive and vague. (Doc. 59, pg. 3). Defendant Hall allegedly "leaves open the question of what he really meant," and "never identifies the documents on which he relied." (Doc. 59, pg. 3). Defendant Dukes, for his part, "did not answer at all." (Doc. 59, pg. 4).[5] Finally, Plaintiff argues, "[b]y stating in the passive voice the document(s) 'replied

---

[3]Defendant Hall indicates he "relied upon…the document in which [Plaintiff] admitted to the allegations of Karlie Patten," rather than "the report of Attorney Charles A. Pierce." (Doc. 59-2, pgs. 2, 4).

[4]Defendant Pickett also "relied upon the advise [*sic*] of Tracy Willenborg." (Doc. 59-2, pg. 8).

[5]Plaintiff's Reply indicates, after the filing of the Second Motion for Sanctions, Defendant Dukes, like the other relevant individual Defendants, amended his answer to Interrogatory 2(c). (Doc. 65, pg. 1).

upon,' it is unclear what documents each defendant *relied* on." (Doc. 59, pg. 4) (Emphasis in original.). Plaintiff suggests "the fact that all four answering defendants swore that the documents they listed were 'replied upon' makes it seem as though they chose to avoid saying they 'relied on' documents." (Doc. 59, pg. 4). He further reasons that, "if 'replied' was simply a typo, at least one defendant…would have questioned the word choice," such that "the answers are vague." (Doc. 59, pg. 4). As a sanction under Rule 37(b)(2)(A), Plaintiff requests that the Court prohibit Defendants from introducing evidence as to "the reasons the decision makers decided to discharge [P]laintiff and the documents on which the decision makers relied in deciding whether to discharge [P]laintiff." (Doc. 59, pg. 4).

In their Response, Defendants argue they "have set forth with specificity the information he or she relied upon in making the decision to terminate the Plaintiff." (Doc. 64, pg. 2). In their view, Plaintiff simply does not like the answers, which is not a sufficient basis for sanctions under Rule 37(b)(2)(A). (Doc. 64, pg. 2). Although the Second Motion for Sanctions relates to Interrogatory 2(c), Defendants also note "[e]ach of the Defendants have answered Interrogatory 2a, including Defendant" Dukes. (Doc. 64, pgs. 1-2). Further, as to the meeting minutes sought by Plaintiff in relation to his discharge, Defendants indicate they have explained that "[t]here has never been a mention that the minutes of the closed session in which [Plaintiff]'s terminat[ion] was discussed has been identified." (Doc. 64, pg. 2). Instead, "the minutes that were previously produced…refer to the minutes of the meeting held on November 16, 2020, at which time Karlie Patten first made her Complaints." (Doc. 64, pg. 2). Finally, Defendants indicate their answers were not vague; rather, Plaintiff again does not like those answers. (Doc. 64, pg. 2).

In his Reply, Plaintiff argues only the meeting minutes for one closed session are at issue in Interrogatory 2(c)—the meeting minutes for the closed session where Plaintiff was discharged. (Doc. 65, pgs. 1-2). The meeting minutes from the November 16, 2020, meeting do not relate to that discharge decision or Interrogatory 2(c), and they are not referenced in Defendants' answer. (Doc. 65, pg. 2). Plaintiff notes he was not discharged until June 2021. (Doc. 65, pg. 2). According to Plaintiff, "Defendants do not claim to have produced the minutes of the closed session after which the Village Board decided on discharge." (Doc. 65, pg. 2). He also reminds the Court, again, that the meeting minutes at issue were requested in the First Requests for Production and Defendant Hall did not identify documents relied upon in voting to discharge Plaintiff. (Doc. 65, pgs. 2-3).

After the October 4, 2024, hearing on these matters, the Court, in part, ordered:

> Consistent with its statements on the record, the Court **ORDERS** as follows with respect to the Second Motion for Sanctions and Interrogatory 2(c): (1) in light of the parties' representations, the issue involving Defendant Dukes' failure to answer is **RESOLVED** without the need for further action by the Court; (2) by the close of business on October 7, 2024, each individual Defendant who was a decisionmaker is **DIRECTED** to amend their Response to Interrogatory 2(c) in a manner that specifically identifies, by bates number or some other unique method acceptable to Plaintiff, any documents "on which they relied"; [and] (3) Defendants are **DIRECTED** to continue searching for any meeting minutes or recordings that have been requested but not located and produced to Plaintiff, including those related to the discharge of Plaintiff…. Finally, consistent with Defendants' representations at the hearing, Ms. Stephanie Waggoner, Village Clerk, shall be responsible for conducting searches for documents or other objects that are responsive to Plaintiff's Requests for Production. To the extent she is unable to locate any documents or objects that are responsive to Plaintiff's Requests for Production (and that are relevant to the Second Motion for Sanctions or JWDR), Defendants, on or before October 30, 2024, are **DIRECTED** to supplement their Responses to Plaintiff's Requests for Production by describing the unsuccessful efforts taken by Ms. Waggoner to locate those documents or objects.

(Doc. 69).

Since the Court's entry of the above-quoted Discovery Order, the parties have not submitted anything related to the matters presently at issue.

Now, if a party fails to obey an order for discovery, including as to Rule 37(a), then the Court may issue just orders, including orders that: (1) direct matters to be taken as established for purposes of the action, as the proponent claims; (2) prohibit the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence; (3) strike, in whole or in part, pleadings; (4) stay the proceedings until the order is obeyed; (5) dismiss, in whole or in part, the action or proceeding; (6) enter a default judgment against the disobedient party; or (7) treat the failure to obey as contempt of court. Fed. R. Civ. P. 37(b)(2)(A). In place of or in addition to these orders, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (Emphasis in original.).

The Seventh Circuit has stated, when discussing a case proceeding under Rule 37, "sanctions may be appropriate in any one of three instances—where the noncomplying party acted either with willfulness, bad faith[,] or fault." *Marrocco*, 966 F.2d at 224 (discussing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)) (Emphasis in original omitted.); *see also Fed. Nat'l Mortg. Ass'n*, 2019 WL 5298728 at *3 ("Rule 37 sanctions are appropriate where a party displays willfulness, bad faith, or fault

in violating discovery obligations.") (Emphasis in original omitted.). "Willfulness" and "bad faith" mean an intentional or reckless disregard of a court order. *Marrocco*, 966 F.2d at 224; *Clinical Wound Sols., LLC*, 2023 WL 3568624 at *10. "Fault," by contrast, looks at the reasonableness of the conduct culminating in the violation of the court order. *Marrocco*, 966 F.2d at 224; *Clinical Wound Sols., LLC*, 2023 WL 3568624 at *10; *see also Long*, 213 F.3d at 987 ("Fault…suggests objectively unreasonable behavior; it does not include conduct that we would classify as a mere mistake or slight error in judgment.").

Here, the Court cannot find the circumstances discussed in this Memorandum & Order warrant the harsh sanction requested by Plaintiff under Rule 37(b)(2)(A), namely, a prohibition on evidence related to "the reasons the decision makers decided to discharge [P]laintiff and the documents on which the decision makers relied in deciding whether to discharge [P]laintiff." *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); (Doc. 59, pg. 4). As noted above and at other times in this case, the parties' discovery disputes were largely a product of their own making. In other words, the parties' current arguments suggest easily resolvable matters related to the proper drafting or answering of interrogatories and requests for production were presented to the Court rather than made the subject of focused, results-oriented discussions between experienced attorneys. Such discussions likely would have reflected that the disputes were really the result of inattentiveness or a lack of clarity as to the parties' positions, misunderstandings about the interrogatories or requests for production at issue, or confusion caused by typos. Indeed, it is notable that the parties, presumably, were able to resolve their discovery disputes following the simple guidance provided by the Court in its October 4, 2024, Discovery Order, as no

11

issues regarding Interrogatory 2(c) or meeting minutes were raised with the Court after that date. (Doc. 69). Discovery has now closed. Under these circumstances, and despite Defendants' noted contributions to the suboptimal discovery practice in this case, the Court declines to exercise its discretion to "issue further just orders" for the purpose of imposing the sanction requested by Plaintiff. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *see also Godlove v. Bamberger, Foreman, Oswald, and Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Whether to sanction and the sanction to be imposed are decisions entrusted to the [broad] discretion of the district court."). For the same reasons, the Court finds it would be inappropriate to order Defendants and/or their attorney to pay the reasonable expenses, including attorney's fees, caused by any failure to comply with the Court's prior Discovery Orders. *See* Fed. R. Civ. P. 37(b)(2)(C). Unlike the First Motion for Sanctions, involving Defendants' untimeliness under the Court's Discovery Order, the circumstances of the Second Motion for Sanctions are more fairly traceable to each party.

### III. CONCLUSION

For the reasons explained above, the Second Motion for Sanctions is **DENIED**.

**SO ORDERED.**

Dated: March 11, 2025.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge