**IN THE UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NICHOLAS HEATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VILLAGE OF CENTRAL CITY, | ) | |
| ILLINOIS, GARY HALL, in his official | ) | |
| capacity as Mayor, Trustee, and | ) | |
| President of the Village of Central City, | ) | Case No. 3:22-cv-3120-DWD |
| Illinois, KEN BUCHANAN, in his | ) | |
| official and individual capacity, and | ) | |
| MATTHEW BLAKE DUKES, | ) | |
| ROSEANN PICKETT, DARWIN | ) | |
| CUSHMAN, and CHUCK | ) | |
| MATTMILLER in their official | ) | |
| capacity as Trustees for the Village of | ) | |
| Central City, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Defendants' Amended Motion for Summary Judgment. (Doc. 90). Plaintiff filed a Response in Opposition to that Amended Motion together with a Statement of Additional Material Facts. (Docs. 91, 92, 93). As explained below, the Amended Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

Plaintiff is the former police chief for Defendant, the Village of Central City. (Doc. 1, pg. 1). He served in that capacity from November 2020 to June 2021. (Doc. 1, pgs. 2, 6).

1

On February 27, 2021, the Marion County Sheriff's Office received a report of an incident near the Hideout Inn, which is located in Junction City, Illinois. (Doc. 1, pg. 3). The Marion County Sheriff's Office investigated the incident and created a Case Report, which Plaintiff attached to his Complaint. (Docs. 1, pg. 3; 1-1, generally). The incident allegedly involved a dispute that began in the Hideout Inn before spilling onto the street. (Docs. 1, pg. 3; 1-1, pgs. 3-4, 13-16). Multiple white men allegedly attacked two other men, one of whom was black. (Docs. 1, pg. 3; 1-1, pgs. 3-4, 12). Plaintiff alleges one of the white men, who identified himself as a police officer, called the black man a racial slur and threatened to shoot the two men (Docs. 1, pg. 3; 1-1, pgs. 3-4, 11-12).

The Marion County Sheriff's Office's Case Report suggests the incident outside of the Hideout Inn was caught on video. (Docs. 1, pg. 3; 1-1, pg. 3). Plaintiff alleges:

> Marion County Deputy Williams and Sergeant Shane King reported that the video showed [the two men] leaving the Hideout and crossing the street to go to a separate parking lot. Four [white] males, one of whom appeared to be [Village of Central City Police] Officer [Josh] Patten, followed [the two men]. In an altercation, the four [white] males chased [the black man]. [The two men] got in their vehicle to try to leave but were stopped by a crowd of around eight people. The video last shows two males chasing the car on foot.

(Docs. 1, pgs. 3-4; 1-1, pgs. 3-5).[1]

On March 8, 2021, a Marion County Sheriff's Office detective contacted Plaintiff about Officer Patten's alleged involvement in the above-described incident. (Docs. 1, pg. 4; 1-1, pg. 5). Plaintiff requested, and later received, a copy of the Marion County Sheriff's Office's Case Report. (Docs. 1, pg. 4; 1-1, pg. 5). He "reported Officer Patten's conduct"

---

[1]Officer Patten was also allegedly a police officer in Junction City, Illinois. (Doc. 1, pg. 2).

to Defendant Ken Buchanan and Tracy Willenborg, who were the mayor and Village attorney for Defendant, the Village of Central City, respectively. (Doc. 1, pgs. 2, 4).

On March 22, 2021, Plaintiff emailed the Marion County Sheriff's Office's Case Report to Ms. Willenborg in advance of a scheduled meeting with Plaintiff on the incident. (Doc. 1, pg. 4). At that meeting, Ms. Willenborg allegedly "recommended discharge, expressing her concern about [Officer] Patten's racially based conduct." (Doc. 1, pg. 4). Thereafter, Plaintiff also allegedly "spoke with Mayor Buchanan about Willenborg's communications…concerning Officer Patten." (Doc. 1, pg. 4).

On March 30, 2021, Plaintiff allegedly met with Officer Patten regarding the incident at the Hideout Inn. (Doc. 1, pg. 4). He allegedly informed Officer Patten that Ms. Willenborg recommended his discharge "but that they were considering a lesser punishment." (Doc. 1, pg. 4). Eventually, "Plaintiff and [Mayor] Buchanan decided that they would ask the Village Board to determine Officer Patten's discipline." (Doc. 1, pg. 4). In advance of that request, on April 5, 2021, Plaintiff allegedly asked Ms. Willenborg to state her opinion in a letter that could be read to the Village Board. (Doc. 1, pg. 4).

A few days later, Plaintiff and Mayor Buchanan allegedly decided that Officer Patten's conduct warranted a one-day suspension and write-up. (Doc. 1, pg. 5). That discipline would not have to be presented to the Village Board. (Doc. 1, pg. 5). On April 12, 2021, Ms. Willenborg fulfilled Plaintiff's request by emailing him a letter that could be provided to Mayor Buchanan, "confirming that she had discussed the incident with" Plaintiff. (Doc. 1, pg. 5). Plaintiff describes Ms. Willenborg's email as follows:

3

> Willenborg stated that it had been alleged that Officer Patten participated in conduct that could rise to the level of criminal and had used racially insensitive language. She recognized Officer Patten was not on duty at the time, but that the conduct was "quite concerning" and violated the Personnel Code. She listed parts [of the] Personnel Code that were involved along with discipline, including dismissal.

(Doc. 1, pg. 5).

Plaintiff completed the write-up for Officer Patten's discipline, *i.e.*, the one-day suspension and written reprimand, on April 20, 2021. (Doc. 1, pg. 5).

In May 2021, Plaintiff was formally accused of sexual harassment by Karlie Patten, the Village Clerk. (Doc. 1, pgs. 3, 5). As Village Clerk, Ms. Patten was responsible for "taking minutes or otherwise recording Village Board meetings," including meetings held in closed session. (Doc. 1, pg. 3). She was also the wife of Officer Patten. (Doc. 1, pg. 3). Defendant, Mayor Buchanan, hired an attorney "to investigate Karlie's complaint about plaintiff, the incident involving Josh Patten at the Hideout Lounge, and the interplay between Karlie's complaints and Officer Patten's punishment." (Doc. 1, pg. 5).

On May 28, 2021, Plaintiff was placed on paid administrative leave. (Doc. 1, pg. 6). A month later, Plaintiff's employment was terminated. (Doc. 1, pg. 6).

Plaintiff initiated this lawsuit on December 29, 2022, alleging: (1) a retaliatory discharge under the Equal Protection Clause and 42 U.S.C. § 1983 by all Defendants in their official capacity (Count I); (2) a retaliatory discharge under the Equal Protection Clause and § 1983 by Defendant Buchanan in his individual capacity (Count II); (3) a retaliatory discharge under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, by Defendant, the Village of Central City (Count III); (4) a violation of the State of

Illinois' Whistleblower Act, 740 ILCS 174, by Defendant, the Village of Central City (Count IV); and (5) a retaliatory discharge under the common law of the State of Illinois by Defendant, the Village of Central City (Count V). (Doc. 1, pgs. 6-11).[2]

## II. ANALYSIS

Defendants seek summary judgment on the claims alleged by Plaintiff in the Complaint. The Court will grant that relief if Defendants show there is no genuine dispute as to any material fact, such that they are entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to the materials of record. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the assertions must be supported by a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

If Defendants present evidence to show the absence of a genuine dispute of material fact, then the burden shifts to Plaintiff to provide evidence of specific facts that create a genuine dispute of material fact. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists if there is sufficient evidence for Plaintiff to receive a verdict. *Driveline Sys.*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d

---

[2]Plaintiff alleges, on October 6, 2022, the Illinois Department of Human Rights served a Notice of Substantial Evidence for his charge under the IHRA. (Doc. 1, pg. 8).

475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). Mere speculation, unsupported by the evidence of record, cannot defeat a motion for summary judgment. *Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)).

The Court will not decide credibility, weigh the evidence, or decide which inferences to draw from the facts, as those tasks are reserved for a jury. *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). Instead, based on the evidence, the Court will decide whether a genuine dispute of material fact requires a trial. *Id.* (quoting *Johnson*, 892 F.3d at 893). The Court construes the evidence in a light most favorable to Plaintiff while avoiding the temptation of deciding one party's version of the facts is more likely true than the other party's version of the facts. *Id.* (quoting *Johnson*, 892 F.3d at 893).

## A. Substantive Legal Principles

To prove the retaliatory discharge claims alleged in Counts I, II, and III, which arise under the Equal Protection Clause and § 1983 and the IHRA, Plaintiff must show (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (quoting *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017)); *accord Gnutek v.*

6

*Illinois Gaming Bd.*, 80 F.4th 820, 824 (7th Cir. 2023).[3] On the third prong, which is the only prong at issue, Plaintiff "must muster enough direct and/or circumstantial evidence 'to show that h[is] employer's action was retaliatory.' " *Crain v. McDonough*, 63 F.4th 585, 593 (7th Cir. 2023) (quoting *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022)). Circumstantial evidence "include[s] 'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.' " *Rozumalski*, 937 F.3d at 924 (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)); *accord Crain*, 63 F.4th at 593. Again, the "key question" is whether a reasonable jury could find a causal link between the plaintiff's protected activity and the defendant's adverse employment action. *Rozumalski*, 937 F.3d at 924 (citing *Ortiz v. Werner Enters. Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016)); *see also Crain*, 63 F.4th at 593 ("[T]he record 'must permit the factfinder to conclude the employer's retaliatory animus played a part in [the] adverse employment action.' "); *Kedas v. Illinois Dep't of Transp.*, 149 F.4th 951, 958 (7th Cir. 2025) ("[The plaintiff] must be able to show that the protected activity was a 'but for' cause for the adverse action, meaning 'the adverse action would not have happened without the activity.' ").

If the plaintiff makes a *prima facie* showing of retaliation, then the defendant can produce evidence to demonstrate it had a legitimate and non-retaliatory reason for the

---

[3]As the parties note, retaliatory discharge claims under Title VII and § 1983 have the same elements. *See Nicholson v. City of Peoria, Illinois*, 860 F.3d 520, 523 (7th Cir. 2017); (Docs. 90, pg. 11; 91, pg. 3). Indeed, "the analysis for a retaliation claim under Title VII tracks the analyses for retaliation claims under section 1981, section 1983, and the IHRA," so it is not necessary for the Court to separately discuss the claims arising under each statute. *See Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 n. 2 (7th Cir. 2021) (collecting cases); *see also Levin v. Altisource Sols., Inc.*, 755 F. Supp. 3d 1021, 1036, 1043 (N.D. Ill. 2024) ("Illinois courts 'have adopted the analytic framework' of Title VII to analyze IHRA claims.' ").

adverse employment action. *See Gnutek*, 80 F.4th at 824 (citing *Robertson*, 949 F.3d at 378). To survive summary judgment after such a demonstration, "the plaintiff 'must produce evidence that would permit a trier of fact to establish, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination.' " *Id.* (quoting *Robertson*, 949 F.3d at 378).

It is notable, here, that a pretext is an attempt by the defendant to mask a retaliatory reason with a legitimate excuse. *See Crain*, 63 F.4th at 593 (quoting *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022)). A pretext "is not 'just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.' " *Id.* (quoting *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017)). Courts must "evaluate the honesty of the employer's explanation[] rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (collecting cases); *accord Rozumalski*, 937 F.3d at 927; *see also Crain*, 63 F.4th at 594 ("[W]hen analyzing whether a proffered reason is pretextual, 'we do not evaluate whether [it] was accurate or even whether it was unfair. Our sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief.' "). The plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [it] did not act for the asserted non-[retaliatory] reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *accord Crain*, 63 F.4th at 593 (quoting *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 380 (7th Cir. 2020)).

8

Next, the claims alleged by Plaintiff in Counts IV and V under Illinois' Whistleblower Act and common law, respectively, "are distinct" but "the analysis can overlap." *See Levin*, 755 F. Supp. 3d at 1047 (citing *Perez v. Staples Cont. & Com. LLC*, No. 16-cv-7481, 2020 WL 6448296, *11 (N.D. Ill. Nov. 3, 2020), *aff'd*, 31 F.4th 560). As to the former claim, Plaintiff alleges "Defendant City violated the Whistleblower Act by discharging plaintiff because [he] disclosed to the government Officer Patten's conduct which he had reasonable cause to believe violated State or federal law." (Doc. 1, pg. 9). Section 15(b) of the Whistleblower Act, in pertinent part, prohibits an employer from:

> [T]ak[ing] retaliatory action against an employee for disclosing or threatening to disclose information to a government or law enforcement agency information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice of the employer…violates a State or federal law, rule, or regulation.

740 ILCS 174/15(b).

Consistent with this statutory language, Plaintiff must show: (1) he had a good faith belief that an activity, policy, or practice of Defendant violated an Illinois or federal law, rule, or regulation; (2) he disclosed or threatened to disclose the information to a government or law enforcement agency; and (3) he suffered an adverse employment action by Defendant in retaliation for the disclosure or threatened disclosure. *Id.*; *see also Schultz v. Ruan Transp. Corp.*, 735 F. Supp. 3d 987, 992 (N.D. Ill. 2024) (citing *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15, for the statutory text and elements of a claim under the prior, but similar, version of § 15(b)); 740 ILCS 174/5 (defining what constitutes, and does not constitute, "retaliatory action" in this context).

As to the latter claim under the Illinois common law, Plaintiff must demonstrate: (1) he was discharged by Defendant, the Village of Central City; (2) he was discharged for his activities; and (3) the discharge violates a clear mandate of public policy. *See Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022) (quoting *Turner v. Mem'l Med. Ctr.*, 233 Ill.2d 494, 500 (2009)). Under the third prong, "[t]here is no precise definition for what constitutes a clearly mandated public policy." *Sharenow v. Drake Oak Brook Resort LLC*, 614 F. Supp. 3d 623, 629 (N.D. Ill. 2022) (citing *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130 (1981)). However, the Supreme Court of Illinois has noted the following:

> In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.

*Palmateer*, 85 Ill. 2d at 130; *see also Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 628-29 (7th Cir. 2009) ("Although what counts as a clearly mandated public policy is not precisely defined, the tort has been narrowly construed in Illinois to include only discharges in retaliation for certain activities, such as reporting an employer's criminal violations or violations of health and safety standards.") (internal citations omitted); *Long v. Com. Carriers, Inc.*, 57 F.3d 592, 595 (7th Cir. 1995) (observing retaliatory discharge actions where the plaintiffs cooperated with investigations of a coworker's criminal conduct, disclosed criminal violations of federal law, and reported theft by a coworker).

Similar to the standards articulated for Counts I, II, and III, "a plaintiff must first 'proffer[] sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated' before the employer is required to provide a legitimate reason for the termination." *Perez*, 31 F.4th at 571 (quoting *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012)). Further, under Illinois' Whistleblower Act and the common law:

> Illinois courts equate retaliation with causation: "The requirement that the discharge be in retaliation for an employee's activities requires that a plaintiff establish a causal relationship between the employee's activities and the discharge." A whistleblower claim thus requires a plaintiff to show that he suffered an adverse employment action *because of* his protected activity.

*Mollett v. Luminant Power, LLC*, No. 24-cv-4877, 2025 WL 3101842, *4 (N.D. Ill. Nov. 6, 2025) (internal citation omitted and emphasis in original); *see also Phillips v. Cont'l Tire the Americas, LLC*, No. 12-cv-307, 2013 WL 12097571, *3 (S.D. Ill. May 14, 2013) (discussing, in the context of a retaliatory discharge claim under the Illinois common law, legal principles for the causation element that are similar to those articulated for Counts I, II, and III); *Patton v. Rhee*, 806 F. Supp. 3d 790, 807 (N.D. Ill. 2025) ("Illinois law approaches the element of causation under the IWA in the same manner as it is analyzed in retaliatory discharge cases."); *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019) (" 'The requirement that the discharge be in retaliation for plaintiff's activities requires that a plaintiff establish a causal relationship between the employee's activities and the discharge.' And, to prove causality, the plaintiff must show 'more than a sequential connection.' Rather, the plaintiff has the burden of 'affirmatively show[ing] that the discharge was primarily in retaliation for his exercise of a protected right.' ").

11

## B. The Parties' Arguments and the Court's Application of the Substantive Legal Principles

In this case, Defendants do not dispute Plaintiff, as the police chief of the Village of Central City, "ha[d] the right and/or obligation to report the conduct of Joshua Patten to the various authorities." (Doc. 90, pgs. 12-13). As alluded to above, it is only the causation elements of Plaintiff's claims that are presently challenged by Defendants' Amended Motion for Summary Judgment. More specifically, on the evidentiary record, Defendants argue Plaintiff is unable to prove "he would not have been fired 'but for' reporting the conduct of Joshua Patten to the authorities or disciplining Joshua Patten." (Doc. 90, pg. 13). Defendants stress "the evidence is overwhelming [that] the Village of Central City had a non-retaliatory reason for terminating [his] employment," namely, the sexual harassment of Karlie Patten. (Doc. 90, pgs. 13, 15). Defendants elaborate as follows:

> Beginning prior to the Balloon Fest 2020, and continuing up until April, 2021, [Plaintiff] continued to sexually harass the Village Clerk, Karlie Patten. The Plaintiff argues that Karlie Patten, the then-wife of Joshua Patten, submitted her Complaints to the Mayor in retaliation of the discipline to Joshua Patten for the purpose of terminating [Plaintiff]. The evidence is clear that Karlie Patten submitted her Complaints prior to [the] discipline of Joshua Patten. It is clear from the evidence that the Village Board in deciding to terminate [Plaintiff], relied upon the allegations of sexual misconduct and [Plaintiff]'s violation of the Village Code of Central City. There is no evidence any of the Board Members in acting together to terminate the employment of [Plaintiff], did so as a result of the one day suspension of Joshua Patten, or [Plaintiff] reporting Joshua Patten's conduct to the Marion County States Attorney.

(Doc. 90, pg. 13) (internal citations omitted).

In light of this non-retaliatory explanation for Plaintiff's termination from employment, Defendants argue the burden shifts to Plaintiff to prove a pretext. (Doc. 90,

12

pg. 14). On that issue, they state: "It is clear taking the evidence in a light favorable to the Plaintiff, there is no connection between the termination of his employment by the Village of Central City and [Plaintiff] disciplining [Officer Patten] for one day as a result of his behavior at the Hideout Lounge in Junction City, Illinois." (Doc. 90, pgs. 14-15).

Finally, in the alternative on Count I, Defendants note Plaintiff's request to recover from Defendants in their official capacities. (Doc. 90, pg. 15). They argue, even if the Court denies summary judgment on Count I due to the existence of genuine disputes of material fact, the individual Defendants remain entitled to summary judgment on that Count, as the claims against them "are essentially a suit against the municipality and said claims are redundant to the claim against the Village of Central City." (Doc. 90, pg. 16).

In response, Plaintiff argues there are substantial disputes of material fact that must be answered by a jury. (Doc. 91, pg. 3). As to Counts I and II, for which "the only issue is whether there is sufficient evidence of [a] 'causal connection,' " Plaintiff argues the following circumstances create genuine disputes of material fact: (1) the timing of Plaintiff's protected activity together with Josh and Karlie Patten's reaction to it, *i.e.*, Karlie's alleged threat to quit her job as Village Clerk, Josh and Karlie's alleged threat to sue the Village of Central City, and Karlie's claim of sexual harassment against Plaintiff; (2) Karlie's "close personal relationship" with Defendant Buchanan, the Mayor of the Village of Central City, who allegedly "protected Karlie from misconduct allegations" and "circulated a fabricated letter in which Plaintiff admitted Karlie's allegations"; (3) whether Defendants were persuaded, even if unwittingly, to act based on Josh and

13

Karlie Patten's unlawful bias; and (4) Karlie's alleged statement that she wanted Plaintiff terminated, and Defendant Buchanan's decision to terminate him. (Doc. 91, pgs. 3-6).[4]

Plaintiff argues the above-stated circumstances create genuine disputes of material fact about whether Karlie Patten's claim of sexual harassment was a pretext for Plaintiff's firing. (Doc. 91, pg. 7). Plaintiff also identifies other evidence that creates genuine disputes of material fact on the pretext issue, including, *inter alia*, the following: the "fabricated document, supposedly signed by Plaintiff, in which [he] admitted to sexually harassing Karlie"; Village Attorney Willenborg's recommendation to the Village Board, based on reasons not stated in the meeting minutes, for Plaintiff to be terminated; Karlie Patten's "suspicious" written complaints of sexual harassment by Plaintiff, as she did not tell her husband about the written complaints, the written complaints have different dates, there was allegedly a 3-day delay in Karlie making the written complaints, and "the contents of the [written] complaints are contrived"; the attorney hired by Defendant Buchanan to investigate Karlie Patten's complaints of sexual harassment, the incident involving Officer Josh Patten at the Hideout Lounge, and the interplay between Karlie Patten's complaints and Officer Josh Patten's punishment included "false information" in a letter with his reported findings. (Doc. 91, pgs. 7-11).

Plaintiff states he never signed the "fabricated document," which "is gone," yet at least "[o]ne Board Member admitted having relied on the letter as the sole reason for

---

[4]Plaintiff suggests "Defendant Central City did not move for summary judgment on Count III." (Doc. 91, pg. 12). If it did, however, Plaintiff's "arguments would have been the same as his arguments for Count I." (Doc. 91, pgs. 12-13).

voting for discharge." (Doc. 91, pgs. 7-11). Defendants also "failed to produce the recording of the meeting" at which Village Attorney Willenborg made her recommendation, despite an accusation that she "told Buchanan to take the recording home with him." (Doc. 91, pg. 7) (citing 5 ILCS 120/2.06(a), which states: "All public bodies shall keep written minutes of all their meetings, whether open or closed, and a verbatim record of all their closed meetings in the form of an audio or video recording."). Finally, Plaintiff claims Defendants, without any record citation, "repeat[] a falsehood in their brief [that] is essential to their denial that they retaliated against Plaintiff," *i.e.*, "[t]he evidence is clear that Karlie Patten submitted her Complaints…prior to [the] discipline of Joshua Patten." (Docs. 90, pg. 13; 91, pg. 11). On this point, Plaintiff further states:

> [D]efendants admit that on the day Karlie gave Buchanan the complaints, Buchanan drove the complaints to Tracy Willenborg. Buchanan drove the complaints to Willenborg on May 3, 2021; plaintiff disciplined Josh on April 20, 2021. So Karlie Patten did not submit her Complaints prior to the discipline of Joshua Patten.

(Doc. 91, pg. 11).

Finally, as to Counts IV and V, Plaintiff argues providing a reason for a discharge does not automatically defeat a retaliatory discharge claim. (Doc. 91, pg. 12). In his view, a jury must believe the valid, non-pretextual reason for the discharge. (Doc. 91, pg. 12). For the same reasons discussed above, Plaintiff argues a reasonable jury could find Defendants' basis for the termination decision "is not worthy of belief." (Doc. 91, pg. 12).

Here, the Court initially agrees with Defendants that when a complaint names individual municipal defendants in their official capacities, as Count I does in this case, "there is one defendant" because that "is the equivalent of suing the [municipality]."

15

*See Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (citing *Brandon v. Holt,* 469 U.S. 464, 471–73 (1985); *Kentucky v. Graham,* 473 U.S. 159, 165–67 (1985)); *accord Robinson v. Sappington*, 351 F.3d 317, 340 (7th Cir. 2003); *see also Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."). The municipality "is liable for the official actions of its senior policy-making official[s]." *Jungels*, 825 F.2d at 1129 (citing *Graham,* 473 U.S. at 167 n. 14; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986)). In other words, "nothing [i]s added by suing the [individuals] in [their] official capacit[ies]." *Id*.; *accord Robinson*, 351 F.3d at 340. For this reason, summary judgment is **GRANTED** for Defendants Hall, Buchanan, Dukes, Pickett, Cushman, and Mattmiller on Count I. The Village of Central City is the only remaining Defendant for Count I.[5]

---

[5]As an aside, the Court also makes an observation as to the mechanics of Count I. Specifically, the Court observes that neither party discusses *Monell v. Department of Social Services* or its progeny, which allows a private corporation or local government, acting under the color of state law, to be liable under § 1983 for constitutional torts arising from the action or inaction of its final policymakers. *See* 436 U.S. 658, 690 (1978); *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 616-17 (7th Cir. 2022) (citing *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789-96 (7th Cir. 2014)). However, *Monell* and its progeny clearly underpin Plaintiff's theory of liability on Count I. He alleges a municipality, *i.e.*, the Village of Central City, is liable for the actions of a final policymaker, *i.e.*, Defendant Buchanan, "with advice and consent from the Trustees," for "retaliat[ing] against plaintiff [via a discharge] in violation of his rights under the Fourteenth Amendment to the U.S. Constitution as enforced under 42 U.S.C. § 1983[] because [he] opposed conduct that he reasonably believed was unlawful race discrimination under both the Equal Protection Clause and 42 U.S.C. § 1985(3)." *See Stockton*, 44 F.4th at 617 (stating, "[f]or *Monell* liability to attach, [the plaintiff] must first trace the deprivation of a federal right to some municipal action," such as an express policy, a widespread practice or custom, or an action by one with final policymaking authority); *Drager v. Village of Bellwood*, 969 F. Supp. 2d 971, 982 (N.D. Ill. 2013) ("Plaintiff's allegations [against the Village] that the constitutional violation was caused by a municipal agent with final decision-making authority fare better. Plaintiff alleges that Mayor Pasquale, as the Village's Mayor, possessed supervisory authority over all Village departments, and thus had authority to discharge Village employees."); *Kujawski v. Bd. of Com'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999) ("Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority."); (Doc. 1, pgs. 6-7). And, most importantly here, Defendants in no way challenge Plaintiff's theory for Count I. Instead, they only challenge the causation element, which, similar to the other causation principles discussed in this Memorandum & Order, "demand[s] a 'direct causal link between the challenged municipal action and the

Further, the Court notes Defendants did not file a response to Plaintiff's Statement of Additional Material Facts. This is despite the Court, on April 3, 2025, advising "[t]he parties…of the need to carefully review, and ensure compliance with, L.R. 56.1 (eff. Oct. 30, 2023)." (Doc. 89). Accordingly, the Court deems the material facts alleged by Plaintiff in his Statement of Additional Material Facts admitted for purposes of this Memorandum & Order. *See* L.R. 56.1(g) (eff. Oct. 30, 2023) ("All material facts set forth in…a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed."); *see also Hinterberger v. City of Indianapolis*, 966 F.3d 523, 525 (7th Cir. 2020) ("Courts expect parties to know and follow local rules of practice. Failing to do so can prove fatal."); *Phoenix Ins. Co. v. Ackercamps.com LLC*, No. 23-cv-3303, 2024 WL 4870513, *1 (S.D. Ill. Nov. 22, 2024) (citing Seventh Circuit precedent for the proposition that "[c]ourts have broad discretion to enforce strict compliance with local rules governing summary judgment motions"); *Abdel–Ghaffar v. Illinois Tool Works, Inc.*, No. 12-cv-5812, 2015 WL 5025461, *6 (N.D. Ill. Aug. 24, 2015), as amended (Sept. 30, 2015), *aff'd*, 706 F. App'x 871 (7th Cir. 2017) (observing the version of Local Rule 56.1, applicable in the Northern District of Illinois, is "clear and unequivocal—compliance…is a critical, and mandatory, component of summary judgment motion practice. 'The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they

---

violation of [the plaintiff's] constitutional rights.' " *See Stockton*, 44 F.4th at 617 (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); citing *Daniel v. Cook Cnty.*, 833 F.3d 728, 736 (7th Cir. 2016)); *see also Harris v. City of Chicago*, 665 F. Supp. 2d 935, 949 (N.D. Ill. 2009) (describing the causation element of a *Monell* claim, alleging a retaliatory discharge by the City of Chicago, as requiring the plaintiff's protected activity to be "a motivating factor" in the defendant-employer's adverse employment action).

propose to support them.' "); *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 971 (N.D. Ill. 2014) ("[T]he Seventh Circuit repeatedly has held that a district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1."). This circumstance, together with the Court's review of the other evidence of record below, creates genuine disputes of material fact that must be resolved by a jury.

Again, it is undisputed that only the causation elements of Plaintiff's claims are presently disputed by the parties. At a minimum, on the singular issue of causation, the Court finds the following evidence creates genuine disputes of material fact: (1) the timing and significance of Karlie Patten's informal complaints (August 2020) versus the delivery of her formal complaints (May 2021) against Plaintiff, Josh Patten's discipline (April 2021), and Plaintiff's placement on leave and termination (May and June 2021); (2) Karlie Patten's alleged threat to quit her position as Village Clerk if her husband, Josh Patten, was fired in relation to the incident at the Hideout Inn; (3) the allegation that the Pattens would file a lawsuit against Defendant, the Village of Central City, if Josh was fired in relation to the incident at the Hideout Inn;  (4) the fact that Karlie Patten "came into the office 'madder than hell' " after Josh Patten was disciplined, stating she "was going to resign" and "plaintiff was sexually harassing her"; (5) Karlie and Josh Patten's agreement that Karlie would resign her position as Village Clerk, which "would save Josh's job"; (6) Defendant Buchanan asking Karlie Patten to make a complaint against Plaintiff rather than quit; (7) Defendant Buchanan asking Plaintiff to resign; (8) Defendant Buchanan "circulat[ing] a document purportedly signed by plaintiff in which [he] admitted all of Karlie Patten's allegations" even though he "never signed or

otherwise prepared any letter"; and (9) certain individual Defendants, and perhaps others, relying on the "circulated document" to terminate Plaintiff. (Docs. 90, pgs. 3-8; 92, pgs. 2-11; 93, pgs. 4-5, 10-15, 17, 20-24). The Court emphasizes Plaintiff's claim that certain evidence under Defendants' control, *i.e.*, certain meeting minutes or recordings and the "fabricated letter" of Defendant Buchanan, was not produced or is missing, incomplete, or misleading. (Docs. 91, pgs. 7-11; 93, pgs. 1-3, 22-24). He also alleges certain of the evidence was to be generated by Karlie Patten as the Village Clerk. (Doc. 1, pg. 3).

Therefore, despite Defendants' invocation of Plaintiff's alleged sexual harassment of Karlie Patten as a legitimate and non-retaliatory basis for its employment decision, the Court concludes for each of Plaintiff's claims that the above-stated factual circumstances, many of which are not disputed by Defendants by virtue of their inclusion in Plaintiff's Statement of Additional Material Facts, must be heard by a jury to decide whether there is a sufficient causal connection or link between Plaintiff's protected activity and termination. *See Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 892 (7th Cir. 2024) (" 'Temporal proximity between protected activity and an adverse employment action can support an inference of causation between the two.' 'A plaintiff may create a triable causation issue by demonstrating that an adverse employment action followed close on the heels of h[is] protected [activity].' At the same time, 'any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action.' ") (internal citations omitted); *Coleman v. Donahoe*, 667 F.3d 835, 860-61 (7th Cir. 2012) ("Our cases reject any bright-line numeric rule [for when suspicious timing can raise an inference of a causal connection], but when there is corroborating

evidence of retaliatory motive…an interval of a few weeks or even months may provide probative evidence of the required causal nexus. 'Deciding when the inference is appropriate cannot be resolved by a legal rule; the answer depends on context. A jury, not a judge, should decide whether the inference is appropriate.' ") (cleaned up); *Harding v. Rosewell*, 22 F. Supp. 2d 806, 815 (N.D. Ill. 1998) ("The timing of [the plaintiff]'s termination after the delivery of the letter *and* the conflicting testimony create a fact question for the jury on the causal connection between the letter and termination.") (Emphasis added); *Cardenas v. First Midwest Bank*, 114 F. Supp. 3d 585, 591 (N.D. Ill. 2015) ("'[T]he ultimate issue is the employer's motive in discharging the employee.' Illinois courts, however, have found that the 'issue of an employer's true motive in terminating an employee is a question of fact.' ") (internal citations omitted). For these reasons, the remainder of Defendants' Amended Motion for Summary Judgment is **DENIED**.

### III. CONCLUSION

As explained above, Defendants' Amended Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** for Defendants Hall, Buchanan, Dukes, Pickett, Cushman, and Mattmiller on Count I. The remainder of Defendants' Amended Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

Dated: March 12, 2026.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

20